Rad v IAC/InterActiveCorp (2019 NY Slip Op 07755)





Rad v IAC/InterActiveCorp


2019 NY Slip Op 07755


Decided on October 29, 2019


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on October 29, 2019

Richter, J.P., Gische, Kapnick, Kern, Moulton, JJ.


9946 654038/18

[*1]Sean Rad, et al., Plaintiffs-Respondents,
v
IAC/InterActiveCorp, et al., Defendants-Appellants.


Wachtell, Lipton, Rosen & Katz, New York (Marc Wolinsky of counsel), for appellants.
Gibson, Dunn & Crutcher LLP, Dallas, TX (Allyson Ho of the bar of the State of Texas and the District of Columbia, admitted pro hac vice, of counsel), for respondents.



Order, Supreme Court, New York County (Saliann Scarpulla, J.), entered June 13, 2019, which, to the extent appealed from as limited by the briefs, denied defendants' motion to dismiss the cause of action for breach of contract except for the merger-related claims asserted by plaintiffs Alexa Mateen and Justin Mateen, and the causes of action for tortious interference with contractual relations and tortious interference with prospective economic advantage, unanimously affirmed, without costs.
The court properly found that CPLR 7601 does not apply to bar plaintiffs' claims. The parties' stock option agreements did not, in clear, explicit and unequivocal language and without resorting to implication or subtlety, bind plaintiffs to an appraisal valuation or limit their remedies in the event of a dispute as to valuation (see Matter of Waldron [Goddess] , 61 NY2d 181 [1984]). Initially, the valuation process contained in the 2014 Equity Incentive Plan was not framed as a dispute-settling mechanism and it was not an adversarial process. The Plan merely stated that Tinder and IAC "shall undertake the process described below." Although the parties agreed that the value of their stock options would be determined by the valuation process, nothing in the agreements provided that the valuation would be binding or final or that the parties would be precluded from fully disputing the valuation in court. Moreover, there is no evidence that any of the plaintiffs participated in creating a list of qualified banks or that they were permitted to select the banks that actually conducted the appraisal. Option holders were not direct signatories to the Plan and were not even mentioned in the valuation procedure. The fact that plaintiff Rad, a holder of stock options, participated in the valuation process is not dispositive, as the Plan did not entitle Rad or any other holder of stock options to do so. In light of the foregoing, the parties' other arguments about the application of CPLR 7601 are moot.
The motion court properly found that issues of fact exist as to whether plaintiffs acquiesced to the transaction at issue. Although plaintiff Rad's unvested options vested immediately upon the merger, and he exercised them all, the equitable defense of acquiescence is "fact intensive, often depending ... on an evaluation of the knowledge, intention and motivation of the acquiescing party" (see Julin v Julin , 787 A2d 82, 84 [Del 2001]).
Contrary to defendants' contention, those plaintiffs whose employment terminated prior [*2]to the merger have standing to assert merger-related claims. While they were obligated to sell their outstanding options upon leaving the company, those options were not valued until the merger.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: OCTOBER 29, 2019
CLERK